United States Bankruptcy Court
Southern District of Texas
**ENTERED**
January 26, 2022
Nathan Ochsner, Clerk

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXES
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 20-35854** |
| **LUIS ALBERTO CASTANEDA** | § | |
| and **ESTHER ALICIA CASTANEDA,** | § | **CHAPTER 7** |
| | § | |
| Debtors. | § | |
| | § | |
| **MATTHEW MCCLUNG,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 21-3051** |
| | § | |
| **LUIS ALBERTO CASTANEDA** | § | |
| and | § | |
| **ESTHER ALICIA CASTANEDA,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

Luis Alberto Castaneda and Esther Alicia Castaneda ("Debtors," "Defendants" or "Castanedas") are small business owners, and experienced restauranteurs, who filed Chapter 7 in the expectation that they would get a fresh start. However, the Bankruptcy Code will not discharge debt that was incurred through intentional wrongdoing. Here, the plaintiff invested in an existing restaurant owned and operated by the Debtors in July of 2018. He then invested additional funds in 2018 and 2019 for a 25% ownership interest in another restaurant, which was also to be owned and run by the Debtors. The plaintiff argues that his debt is non-dischargeable as his funds were obtained by fraud (excepted from discharge under Section 523(a)(2)(A)), or were embezzled (excepted from discharge under Section 523(a)(4)), or for willful and malicious injury (excepted from discharge under Section 523(a)(6)). The Debtors' explanation was that the new restaurant was amongst the victims of the COVID 19 pandemic after all restaurants were closed by the Fort Bend County Judge. The Court agrees that the Debtors embezzled funds and the debt of $137,500.00 is excepted from discharge.

Jurisdiction is conferred on this court by 28 U.S.C. § 157(a).  The parties have entered into a Joint Pretrial Stipulation (ECF No. 35), which the Court adopts.  The parties agree that this is a core proceeding and this Court has authority to render a final judgment in this proceeding.[1]

Trial was held on January 25, 2022, with the plaintiff, Matthew McClung and a defendant, Luis Alberto Castaneda as witnesses.

## PROCEDURAL BACKGROUND

This adversary proceeding No. 21-03051 was filed on April 6, 2021 (ECF No. 1) by plaintiff, Matthew McClung (hereinafter "McClung" or "Plaintiff").  An answer was filed on May 21, 2021 (ECF No. 11).  Thereafter, Plaintiff filed an Amended Complaint on December 17, 2021 (ECF No. 22) (the "Complaint"), the live pleading, concerning whether the debt owed by the Castanedas in the amount of $175,000 to Plaintiff is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), 11 U.S.C. § 523(a)(4), and (a)(6); and alleging that Plaintiff is entitled to a constructive trust for the funds that he loaned to the Defendants.  Although the Complaint lists Section (a)(2)(B) in the initial paragraph of the Complaint, there are no other allegations regarding that section in the remainder of the Complaint, nor at trial on this matter.

## FACTS

The parties agree that McClung was a customer at the midtown Houston restaurant Luna y Sol Mexican Grill (the "Grill"), and through frequenting the restaurant, got to know the Castanedas.  The Castanedas were the sole members, managers and officers of the Grill, and ran the day-to-day operations of the Grill.

Their daughter, Anna Castaneda, also a manager at the restaurant, and in conversations with McClung indicated her parents were considering setting up a food truck to supplement their business. McClung mentioned that he had worked with a couple of small businesses, providing loans for operating capital if her parents ever wanted to talk.

The Castanedas contacted McClung and indicated that they had decided not to go into the food truck business, but rather wanted to make improvements to the Grill. In their discussions, the Castanedas said they needed funds to revamp the bar area, add new furniture and related fixtures, and add a "buzzer" system whereby customers would receive a buzzer and be buzzed once food was ready, notifying them to go to the counter and retrieve their food.  Using the buzzer would allow the Grill to reduce staff (and enhance profit) because fewer food runners would be necessary

---

[1] Pretrial Stipulation, ECF No. 35

to take food to customers. The Castanedas represented that their business was growing, and they were wanting to expand the location and do more catering as well.

McClung agreed to make a short-term loan to the Defendants in the amount of $50,000.00 to be deposited for the use of the Grill, and to improve the restaurant. On July 27, 2018 a Loan Agreement[2] was signed providing for 12% interest to be paid quarterly, with the principal of $50,000 due on July 29, 2020.

McClung did receive loan interest payments of $1,500.00 each on October 31, 2018, February 19, 2019, and May 3, 2019 pursuant to the terms of the $50,000.00 loan. In the meantime, the parties discussed further expanding the restaurant business. The Castanedas were evaluating the market in Katy and were considering adding two (2) additional restaurants and potentially more. The Castanedas wanted to follow the Hwy 99 corridor opening several restaurants over the next few years. They planned to start a restaurant in a new development called District West (https://www.district-west.com/)

The Castanedas put in a letter of intent to open a flagship Luna y Sol restaurant at District West. District West was to break ground in October of 2018 and the new restaurant would be in business the following May. However, prior to opening this "flagship" restaurant, the Castanedas wanted to open a small bakery/restaurant that would produce additional revenue and help fund the flagship. The "deal" was that McClung would invest in the bakery/restaurant in exchange for a large equity stake and he would be given a preferred position to invest in the flagship.

The plan for the bakery/restaurant was to make fresh tortillas and Mexican baked goods. The Castanedas planned to run the restaurant and generate royalties by selling house made salsa and tortilla recipes by licensing to other vendors. The Castanedas even mentioned having Luna y Sol tortillas and salsa at HEB and similar stores. The Castanedas provided to McClung a business plan that indicated it needed $125,000.00 for the build out of a bakery/restaurant, equipment, furniture, fixtures and working capital.

From November 2018 through May 2019 (with an additional $5,300 to cover rent in August 2019), McClung "invested" $87,500 in the new restaurant in exchange for a 25% ownership interest. The Castanedas did not open a bakery but did open a casual Mexican restaurant, Luna y Sol Mexican Eatery ("the Eatery") in January 2020.

---

[2] ECF No. 36-1. The Loan Agreement expressly provides that the loan is "to provide temporary working capital for use in the Borrower's business." The funds were not used for this purpose.

Thus, McClung's total investment was $92,800. The Eatery was located in The Shops on Richmond Lakes. The original lease for the space included a Tenant Allowance of $59,377.50.[3] After entering into the lease and having only taken minor steps in finishing out the anticipated Shops on Richmond Lakes location, another space in the strip center opened up which was previously an Asian food restaurant.  The landlord agreed to change locations and entered into an amendment to the lease. The Lease Amendment provided for $118,755.00 Tenant Allowance.[4] The Castanedas were the managers and officers of the Eatery and held the majority membership interest in the Eatery.

The Castanedas also applied for funding from NextSeed in December 2018, but Nextseed refused to provide funding.  In connection with negotiations with Inroveca in 2019 to loan money to the Eatery, the Castanedas prepared a business plan reflecting significant sales over the next several years and a total funding request of $125,000 for "the build out of the restaurant, equipment, furniture, fixtures and working capital."[5] The Castanedas provided a copy of the business plan to McClung as well.  Ultimately, Inroveca loaned $150,000 in 2019 to the Eatery, which allowed it to purchase the assets of the Asian restaurant.[6]

The Grill closed in June of 2019, the Eatery opened in January of 2020 and closed in September 2020, with all investors losing their funds.  Prior to closing, the Eatery received a PPP loan for approximately $65,000.00.

Although, the Castanedas blame the failure of the Eatery on the pandemic, the Plaintiff alleges that it was the misrepresentations regarding the cash flow issues at the Grill, as well as the embezzlement of the funds that he loaned and invested with them for their own personal use, that caused the closures of the two businesses.  In all, the Plaintiff alleges that the Defendants misappropriated between $300,000 and $500,000 from the Grill and the Eatery for their personal benefit, including funding repairs to their personal home.  The Court finds four separate causes of action.

---

[3] ECF No. 36-25.
[4] ECF No. 36-26.-
[5] ECF Nos. 36-23, 36-24
[6] Draft Asset Purchase and Sale Agreement, ECF No. 36-37, page 60

## ANALYSIS

**1. The $50,000 loan**

McClung asserts that the Castanedas used his entire initial loan of $50,000.00 for personal expenses, instead of for operating expenses and improvements to the Grill as set forth in the Loan Agreement.  In support of his assertion, McClung offered the Grill's bank account records, account No. 6142.[7]  These records show the deposit of the $50,000.00 on July 26, 2018.  The beginning balance in the account on July 26, 2018 was $0.19.  In reviewing the total deposits and transfers from July 27, 2018 through August 16, 2018, the Court finds that all of McClung's funds were exhausted by August 16, 2018, leaving a balance in the bank account of $0.46.[8]  During this period of time, six transfers were made to the Castanedas' personal bank account totaling $31,540.00.[9]  Mr. Castenada did not testify as to what operating expenses or improvements were made with any of these funds, and presented no evidence as to how these funds were spent.  The Plaintiff testified that no improvements were made to the Grill during this time.

However, contrary to Defendants' representations, the Grill had significant cash flow issues at this time, and the Castanedas were diverting the company loaned funds to other uses.  On July 27, 2018, the $50,000 was deposited into the Luna y Sol Mexican Grill LLC deposit account (account # 6142).  At the time of that deposit, that account had a balance of $0.19.  Thereafter, the day after the deposit, the Castanedas began regular transfers to other accounts, including their personal accounts such that as of August 16, 2018, the account balance was $0.36.

As shown by the summaries introduced by the Plaintiff[10] by August 13, 2018, there were identifiable transfers of $31,540.00 into the Debtors' personal bank accounts by August 16, 2018.  The transfers and deposits of sale receipts into business deposit account can be summarized as follows:

---

[7] ECF No. 36-8.
[8] ECF No. 36-8, pages 4-9.
[9] ECF 36-2.
[10] ECF No. 36-2.

| Business Account | | #6142 | Balance |
|---|---|---|---|
| Begining Balance | 7/26/2018 | $        0.19 | |
| Loan Deposit | 7/26/2018 | $  50,000.00 | $  50,000.19 |
| Sales Deposits | 7/27/2018 - 8/3/2018 | $    9,132.62 | $  59,132.81 |
| Transfers | 8/3/2018 | $ (20,374.00) | $  38,758.81 |
| Sales Deposits | 8/6/2018- | $    3,472.94 | $  42,231.75 |
| Transfers | 8/6/2018 | $ (27,300.00) | $  14,931.75 |
| Sales Deposits | 8/7/18- 8/13/2018 | $    7,848.95 | $  22,780.70 |
| Transfers | 8/7/2018- 8/13/2018 | $ (15,584.41) | $    7,196.29 |
| Sales Deposits | 8/14/2018- 8/16/2018 | $    2,120.17 | $    7,196.29 |
| Transfers | 8/15/2018- 8/16/2018 | $  (9,316.00) | $        0.46 |

The accounting above was conducted by the Court based on admitted evidence and not summarized by the parties.  The Court notes that some of the transfers above were not into the personal accounts of the Debtors and may possibly have been for business expenses, however, by the testimony of the Debtor, Luis Alberto Castaneda, the Debtors' comingled funds between business and personal accounts.  Additionally, it is clear from the testimony and documentary evidence that not all of the deductions from the business accounts were business expenses, but were for personal expenses.  Effectively, both business accounts as well as personal accounts were paying the personal expenses of the Debtors contrary to the terms of the $50,000.00 note.

The Court notes the burden shifting in this case.  The plaintiff has the initial burden of proof.[11]  The burden of a preponderance of the evidence was met by the Plaintiff.  The evidence is clear that more than 50% of the funds ($31,540) borrowed went into the personal accounts of the Debtors and were not used as "temporary working capital for use in the Borrower's business."  Additionally, the evidence is clear that the Debtors were also paying personal expenses out of their

---

[11] "[T]he standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).  "Nondischargeability must be established by a preponderance of the evidence." *Countrywide Home Loans, Inc. v. Cowin (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

business accounts.  The Court, based on the evidence, cannot say that every dollar that the Plaintiff loaned was used to pay personal expenses of the Debtors.  What it can say, however, is that the Plaintiff met his burden of proof.  Further, that as soon as the Plaintiff met his burden of proof, that the burden shifted to the Debtors[12] and that Debtors offered no summaries, no accounting, no receipts, no documentary evidence of his claimed businesses expenses.  This Court notes that it has attempted to review the bank statements offered into evidence to find that some portion of the loan was paid to business expenses.  The records are unfortunately unclear; but importantly, the Court has no obligation to conduct this accounting.  The duty falls to the Debtors, and they have failed in this regard.

Additionally, the Court notes that without any documentary evidence supporting the Debtor's oral testimony that the Debtors spent the funds only on business expenses, these claims are not credible given the great weight of the evidence.  The Debtors would have been well served to spend time prior to trial to provide documentary evidence supporting his oral testimony.  Accordingly, the Court must determine if the entire $50,000.00 is a non-dischargeable debt.

Pursuant to 11 U.S.C. § 523(a)(2), a discharge under Chapter 7 will not be granted:

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

The Fifth Circuit has held that the creditor claiming non-dischargeability has the burden of proving, by a preponderance of the evidence, that the debt is exempt from discharge.[13]  11 U.S.C. § 523(a)(2)(A) provides that certain debt is not discharged, but it is only the debt arising from the acts described in Section 523 that is not dischargeable. Sometimes that may be the entire amount owed a creditor, but not always.  Section 523(a)(2)(A) requires that the funds be obtained by fraud or knowingly made a misrepresentation.  The representations here are contained within a contract. A contractual promise can only support a claim for fraud upon proof of fraudulent intent not to perform the promise at the time of contract execution.  Only if a contractual promise is made with

---

[12] If the plaintiff establishes a prima facie case, then the burden shifts to the debtor to present evidence that he is innocent of the charged offense." *In re Duncan*, 562 F.3d 688, 695–96 (5th Cir. 2009) (internal citations omitted).
[13] *Allison v. Roberts (In re Allison)* 960 F.2d 481, 483 (5th Cir. 1992) *citing Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

no intent ever to perform it can the promise itself constitute a fraudulent misrepresentation.[14]  The evidence showed that the Defendants performed in part by making three contractual payments. There was no evidence that it was the Castenadas' intent to defraud McClung at the time that he entered into the Loan Agreement, and the Plaintiff has not met his burden of proof for the debt to be non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

The Plaintiff also relies on 11 U.S.C. § 523(a)(4) which provides:

> Under § 523(a)(4) of the United States Bankruptcy Code, a debtor cannot obtain a discharge from any debt "…for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

The Plaintiff bears the burden of proving her claim under a preponderance of the evidence standard.[15]  The Plaintiff alleges that the Castanedas embezzled the $50,000.00.  The Supreme Court has defined embezzlement as, "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come."[16]  "A creditor proves embezzlement by showing that he/she entrusted property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud."[17]

Here, the Court cannot determine from the testimony or documentary evidence presented if any part of the $50,000.00 was used for the Grill's operating expenses.[18]   Therefore, it must conclude that McClung has prevailed in showing that the Castanedas appropriated his funds to their use, and the Defendants failed to overcome their shifted burden of proof to show that the funds were used as set forth in the contract.  As a result, the Court finds that the Castenadas embezzled the entire $50,000.00.

523(a)(6) requires that the debt is non-dischargeable only if McClung was harmed as an intended result of the Defendants' actions.  Absent is any evidence that there was a motive to cause harm.  Again, the burden of proof is upon the creditor to establish that the debt is non-dischargeable

---

[14] *United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, Nos. 15-496, 15-499, 2016 WL 2956743 (2d Cir May 23, 2016).
[15] *Follo v. Morency (In re Morency)*, No. 10-1133, 2013 WL 1342485, at *7 (Bankr.D.Mass. Apr. 2, 2013) *citing Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).
[16] *Moore v. United States*, 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895).
[17] *In re Miller*, 156 F.3d 598, 603 (*quoting In re Sokol*, 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994).
[18] ECF No. 36-10, page 13.

by a preponderance of the evidence.[19]   The Supreme Court has established guidelines for
determining whether a debt arises from "willful and malicious injury" under § 523(a)(6).[20]   In
*Kawaauhau*, the Court held that § 523(a)(6) does not except from discharge debts arising from
negligently inflicted injury. Rather, it applies only to "acts done with the actual intent to cause
injury," and excludes intentional acts that merely happen to cause injury.[21]   The Fifth Circuit has
noted that debtors generally deny an intent to cause harm. Therefore, most decisions which do find
willful and malicious injury find debts to be non-dischargeable under the objective standard.  The
objective standard is met when the court holds that the debtor "intentionally took action that
necessarily caused, or was substantially certain to cause, the injury." Further, as to the "malicious
injury" requirement of § 523(a)(6), the Fifth Circuit has held that the word "malicious" creates an
"implied malice standard."[22]   The evidence showed that the Defendants intentionally transferred
funds from the Grill's operating account to their personal account, which actions were substantially
certain to cause the Plaintiff's injury.  The Court therefore concludes that the Plaintiff has met his
burden of proof on a Section 523(a)(6) claim.

Plaintiff is also seeking a constructive trust in Defendants' homestead in the amount of
$4,193.21.[23]  However, there was no evidence at trial to support such a remedy.  Moreover,
bankruptcy courts generally do not favor constructive trusts, as they prefer trust beneficiaries over
other creditors.[24]  Because constructive trusts are disfavored in bankruptcy, creditors seeking
constructive trusts must show a fraud that could not be remedied through a Section 523
action.[25]Since the Plaintiff has prevailed on its Section 523 action, the Court finds that a
constructive trust is not warranted.

**2. The $87,500 investment**

McClung testified that he entered into negotiations with the Castanedas to invest in an
additional restaurant.  The total investment agreed between the parties was that McClung was to
pay $87,500.00 in exchange for a 25% ownership interest in a new restaurant.  He stated that his
funds were to be used for the opening of the new restaurant and to show NextSeed that the new

---

[19] *Grogan v. Garner*, *supra*, 498 U.S. at 291.
[20] *Kawaauhau v. Geiger*, 523 U.S. 57, 59, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).
[21] *Id*. at 61.
[22] *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 605 (5th Cir. 1998).
[23] Complaint, ECF No. 22, page 8
[24] *In re Horton*, 618 B.R. 22 (Bankr. D. N.M. 2020) *citing XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994).
[25]  *In re DC Energy, LLC*, 555 B.R. 796 (Bankr. D. N.M. 2016).

restaurant had sufficient capital in order to support additional funding from NextSeed for the build out of the restaurant, equipment, furniture, fixtures and working capital, as set forth in the business plan.[26]  In support of this assertion, he signed a guaranty for a lease on October 26, 2018 for Luna y Sol Mexican Bakery & More, LLC.[27]  Plaintiff did not make the investment in one lump sum, but over several months, with the final $32,000.00 paid on May 2, 2019.[28]  McClung presented the bank statements showing that after every one of his deposits, the funds were immediately transferred out of the restaurant's operating account.  Moreover, Mr. Castaneda testified that he commingled these funds with funds from the Grill and his personal accounts.  The bank account statements show that the balance in the account as of May 1, 2019 was $8.00, and there were no funds left in the account at all as of May 2, 2019, immediately after the deposit of $32,000.00.[29] Therefore, there were no funds available to show the capital required by NextSeed's email dated April 30, 2019,[30] nor were there any funds available for the operation of the new restaurant.

Again, there was no evidence that it was the Castenadas' intent to defraud McClung when they first entered into the agreement to go into the partnership.  However, the Plaintiff showed by clear and convincing evidence that the Castanedas embezzled the $87,500.00 funds he entrusted to them.  The Castanedas failed to present any evidence to the contrary.  Moreover, the evidence shows that the Castanedas were aware that their actions were substantially certain to cause the Plaintiff's injury.

**3. The $5,300 rent payment**

McClung testified that he became aware of a default of the lease he guaranteed in July 2019.  Thereafter, he signed a Second Amendment to Lease Agreement.[31]  In consideration for the landlord to renegotiate the lease, and to waive rent from June through October 2019, the landlord required almost $5,300.00, which McClung paid.  This amount was paid to the landlord, and the Court finds that the Plaintiff failed to overcome his burden of proof under any section of 523.

---

[26] ECF No. 36-23.
[27] ECF No. 36-25.
[28] ECF No. 36-12, pages 1, 5, 13, and 23
[29] ECF No. 36-12, page 23.
[30] ECF No. 36-27, pages 10-11.
[31] ECF No. 36-26

### 4. Attorneys' fees

Under the American Rule, each party pays its own attorney's fees arising out of litigation.[32] An exception exists when specific authority is granted by statute or contract states otherwise. Since the Bankruptcy Code does not independently provide attorney's fees to a party seeking an exception to discharge,[33] there must exist a basis for an award of attorneys' fees. Under Texas law, a party is entitled to attorneys' fees when either a contract provides for such fees, or when a statute indicates it may recover fees.[34] The Plaintiff claims attorney's fees are warranted pursuant to Tex. Civ. Prac. & Rem. Code § 38.001 *et seq.*[35] Tex. Civ. Prac. & Rem. Code § 38.001(b) sets forth the claims available for attorney's fees, which include claims for services, performed labor, furnished material, freight or express overcharges, lost or damaged freight or express, killed or injured stock, a sworn account or an oral or written contract. There is no dispute that the Castanedas breached the Loan Agreement, however, that contract did not provide for attorneys' fees. Accordingly, the Plaintiff cannot claim a right to attorneys' fees on the basis of either breach of contract under Texas law.

### Damages

The Court finds that McClung was a credible and competent witness, and the Court does not question either his truth or veracity. The Court finds that Mr. Castaneda was an unreliable witness. The Court awards a non-dischargeable judgment against the Castanedas pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6) in the amount of $137,500.00, plus post judgment interest at the federal judgment rate for which execution may issue.

The Court will issue a separate Judgment.

SIGNED 01/26/2022

Jeffrey Norman
United States Bankruptcy Judge

---

[32] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 441 L.Ed2d 141 (1975).
[33] *In re Koukhtiev*, 576 B.R. 107, 135 (Bankr. S.D. Tex. 2017).
[34] *In re Kakal*, 596 B.R. 335 (Bankr. S.D. Tex. 2019).
[35] ECF no. 22, page 9.